UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALETHA JACKSON, o.b.o. A.B., a
Minor,

      Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

Case No. 18-11391

Stephanie Dawkins Davis
United States District Judge

## OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 17, 19)

## I.     PROCEDURAL HISTORY

### A.     Proceedings in this Court

On May 3, 2018, plaintiff, who is the mother of A.B., a minor child, filed the

instant suit.  (ECF No. 1).  This matter is currently before the Court on cross-

motions for summary judgment.  (ECF Nos. 17, 19).

### B.     Administrative Proceedings

Plaintiff filed an application for supplemental security income childhood

disability benefits on February 6, 2015, on behalf of her minor child, A.B., alleging

disability beginning on July 1, 2011.  (Tr. 14).[1]  The claim was initially

---

[1] The Administrative Record appears on the docket at entry number 13.  All references to the same are identified as "Tr."

1

disapproved by the Commissioner on June 25, 2015.  Plaintiff requested a hearing

and on February 2, 2017, plaintiff, A.B., and A.B.'s grandmother, Lisa Jackson

appeared, without counsel, before Administrative Law Judge ("ALJ") Andrew G.

Sloss, who considered the case *de novo*.  (Tr. 29-48).  In a decision dated June 2,

2017, the ALJ found that A.B. was not disabled.  (Tr. 11-25).  Plaintiff requested a

review of this decision, and the ALJ's decision became the final decision of the

Commissioner when the Appeals Council, on February 28, 2018, denied plaintiff's

request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44

(6th Cir. 2004).

      For the reasons set forth below, the undersigned **DENIES** plaintiff's motion

for summary judgment, **GRANTS** defendant's motion for summary judgment, and

**AFFIRMS** the findings of the Commissioner.

## II.    ALJ FINDINGS

      The claimant, A.B., born May 11, 2006, was a school-age child on February

6, 2015, the date the application was filed, and was a school-age child on the date

of the decision.  (Tr. 17).  The claim for disability on A.B.'s behalf is based on

attention deficit disorder.  (Tr. 17).

      At Step I of the three-step sequential evaluation process, the ALJ found that

A.B. has never engaged in substantial gainful activity.  (Tr. 17).  At Step II, the

ALJ found that A.B. has attention deficit-hyperactivity disorder, which he found to

be a severe impairment that caused more than minimal functional limitations. *Id.*

At Step III, the ALJ found that A.B. did not have an impairment or combination of

impairments that met or medically equaled the Listings or that functionally equaled

the Listings. (Tr. 17-25). In denying the claim, the ALJ found that A.B. did not

meet or equal Listing 112.11 or any other equivalent Listing (Tr. 17). The ALJ

went on to evaluate A.B.'s degree of limitation in each of the six functional

equivalence domains and concluded that he had no marked or extreme limitations

in the six broad functional domains and thus did not functionally equal a listed

impairment. (Tr. 17-25). The ALJ thus determined that A.B. was not disabled

from February 6, 2015, through the date of the decision. (Tr. 25).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If a

claimant finds no relief during this administrative review process, the claimant

may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health*

*& Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

  B. <u>Legal Standards – Eligibility for SSI Childhood Disability Benefits</u>

  A child will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations."  42 U.S.C. § 1382c(a)(3)(C)(i).  To determine whether a child's impairments result in marked and severe limitations, Social Security Administration (SSA) regulations prescribe a three-step sequential evaluation process:

> 1.  A child will be found "not disabled" if he engages in substantial gainful activity.
>
> 2.  A child will be found "not disabled" if he does not have a severe impairment or combination of impairments.

3.  A child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416. 924(a)-(d).

To determine whether a child's impairment functionally equals the listings, the SSA will assess the functional limitations caused by the child's impairment.  20 C.F.R. § 416.926a(a).  The SSA will consider how a child functions in six domains:

1.      Acquiring and using information;

2.      Attending and completing tasks;

3.      Interacting and relating with others;

4.      Moving about and manipulating objects;

5.      Caring for yourself; and

6.      Health and physical-being.

20 C.F.R. § 416.926a(b)(1).  If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain,[2] the impairment functionally equals the listing and the child will be found disabled.  20 C.F.R. § 416.926a(d).

---

[2] A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).  An extreme limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).

C.    Analysis

1.    Step Two

Plaintiff contends that the ALJ committed reversible error when he failed to find A.B.'s enuresis to be a severe impairment and then did not consider any limitations caused by this impairment in the decision.  Plaintiff recounts from the record evidence A.B.'s treatment for this condition and difficulties caused by it. (ECF No. 17, PageID.330-332).  Plaintiff argues that there are more than de minimis findings regarding A.B.'s enuresis and therefore, it is a severe impairment. Plaintiff also contends that the error was not harmless because the ALJ failed to account for any limitations caused by this condition elsewhere in his decision.

The Commissioner argues that the failure to discuss enuresis was a harmless error because the ALJ continued the disability evaluation and relied on medical opinions finding the condition non-severe.  Further, the Commissioner contends that there is no evidence in the record that A.B.'s enuresis caused even minimal functional limitations.

Plaintiff is correct that the ALJ did not expressly consider whether A.B's diagnosis of enuresis was a severe impairment.  However, to the extent there is any error in the ALJ's failure to expressly consider enuresis, the error is harmless as plaintiff fails to come forward with any evidence of functional limitations caused by A.B.'s enuresis.  To be considered a "severe" impairment at Step 2, the

claimant must have a "medically determinable impairment" that causes more than a "slight abnormality."  20 C.F.R. § 416.924(c).  An impairment is "medically determinable" when it "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3); *see also* S.S.R. 96-4p, 1996 WL 374187, at *1 (July 2, 1996) ("A 'symptom' is not a 'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such an impairment.").  An ALJ's error in excluding an impairment as "severe" at step two is not harmful so long as the ALJ finds another severe impairment, continues with the five-step analysis, and accounts for all impairments, both severe and non-severe, at the subsequent analytical steps.  *See e.g., Swartz v. Barnhart*, 188 Fed. Appx. 361, 368 (6th Cir. 2006).

As stated, the ALJ did not expressly discuss enuresis in the decision. However, in this instance, the ALJ's error is harmless for two reasons.  First, although A.B. suffers from enuresis, there is no medical opinion in the record assessing limitations caused by enuresis during the relevant period.  *Richard v. Astrue*, 2011 WL 4688788, at *5 (N.D. Ohio Oct. 4, 2011) (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990)) ("it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment."); *Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923,

930 (6th Cir. 2007) ("When doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment.") (citation omitted).  In March 2014, A.B.'s medical provider recommended "pull[-]ups for enuresis," but identified no functional limitations.  (Tr. 180).  In June 2015, Matthew P. Dickson, Ph.D., also noted A.B.'s daily nocturnal enuresis (with no reported sleep problems), but assessed no functional limitations based on the condition.  (Tr. 207-09).  Second, the ALJ relied on a medical opinion that expressly evaluated the functional impact of A.B.'s enuresis.  More specifically, the ALJ gave great weight to the June 2015 opinion of William Schirado, Ph.D., and Milford Schwartz, M.D., that A.B.'s "other disorders of urinary tract" was a non-severe impairment, i.e., that it caused no more than minimal functional limitations.  (Tr. 20-25, 53-54); *see Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 443 (6th Cir. 2010) ("Every medical opinion that the ALJ evaluated acknowledged Coldiron's obesity.  Thus, by utilizing the opinions of these physicians in fashioning Coldiron's RFC, the ALJ incorporated the effect that obesity has on the claimant's ability to work into the RFC he constructed.") (citation omitted).  On this record, plaintiff points to no evidence suggesting that A.B.'s enuresis caused any functional limitations

warranting a finding of reversible error.  Under these circumstances, the court finds

any error at step two to be harmless.

>  2.  Listing 112.11

Plaintiff contends that the ALJ's determination that A.B. does not meet or

medically equal Listing 112.11 is not supported by substantial evidence.  Listing

112.11 provides:

> 112.11 Neurodevelopmental disorders (see 112.00B9),
> for children age 3 to attainment of age 18, satisfied by A
> and B:
>
>> A. Medical documentation of the requirements of
>> paragraph 1, 2, or 3:
>>
>>> 1. One or both of the following:
>>>
>>> a. Frequent distractibility, difficulty sustaining
>>> attention, and difficulty organizing tasks; or
>>> b. Hyperactive and impulsive behavior (for
>>> example, difficulty remaining seated, talking
>>> excessively, difficulty waiting, appearing
>>> restless, or behaving as if being "driven by a
>>> motor").
>>>
>>> 2. Significant difficulties learning and using
>>> academic skills; or
>>>
>>> 3. Recurrent motor movement or vocalization.
>>
>> AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):

1. Understand, remember, or apply information (see 112.00E1).

2. Interact with others (see 112.00E2).

3. Concentrate, persist, or maintain pace (see 112.00E3).

4. Adapt or manage oneself (see 112.00E4).

20 C.F.R. § Pt. 404, Subpt. P, App. 1.  While plaintiff's argument suggests that the ALJ erred in failing to conclude that A.B. did not meet the Listing, plaintiff's brief only focuses on the requirements for a finding of functional equivalency.  More specifically, plaintiff posits that A.B. has at least "marked" impairments in the areas of "attending and completing tasks," "interacting and relating with others," and in "caring for yourself."

a.    Attending and completing tasks

The domain of attending and completing tasks considers "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them."  20 C.F.R. § 416.926a(h).   The statute provides guidance, by age group, on how children should be functioning in this domain:

> (iv) School-age children (age 6 to attainment of age 12). When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).  The statute also provides examples of limited functioning in this domain:

> (3) Examples of limited functioning in attending and completing tasks. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
(ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.
(iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
(iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
(v) You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a(h)(3).

The ALJ analyzed this domain as follows:

The claimant has less than marked limitation in attending and completing tasks. The claimant has been diagnosed with, and he takes medication for, attention deficit hyperactivity disorder.  School records indicate he needs constant redirection and is easily distracted (Exhibit 6E, page 3).  However, recent psychological examinations indicate high GAF scores (i.e., Exhibit 6F, page 8).  He is generally doing well in school despite his attention deficit hyperactivity disorder and does not require special education. The State agency consultant opines less than marked limitation in this area of functioning (Exhibit lA, page 6).  That opinion is consistent with the evidence of record and is accorded great weight.

(Tr. 21).  Plaintiff provides a chart of A.B.'s difficulties which she says show that he had marked limitations in attending and completing tasks.  Plaintiff cites examples of A.B. being unable to stay in his seat, failing to follow directions on the bus leading to suspension from bus transportation, constantly moving and needing reminders to sit still and stop rolling around, an inability to focus or stay in

control, and multiple psychiatric evaluations showing poor concentration and an

inability to complete tasks.  (ECF. No. 17, PageID.335-341).

Notwithstanding the evidence plaintiff cites, the ALJ's decision finding less

than marked limitations in this domain is supported by substantial evidence.  While

school records and reports from home show some impairment, they also show that

A.B. was generally successful in school and that he did not require special

education.  (Tr. 21).  Although A.B.'s teacher, Krista Ketterer, wrote that he

"needs constant redirection when working," she also indicated that A.B. had no

problems completing class and homework assignments, completing work

accurately without careless mistakes, carrying out single or multi-step instructions,

and working at a reasonable rate and finishing on time.  (Tr. 21, 155).  In January

2015, plaintiff described A.B. as a "good student."  (Tr. 199).  In a March 2015

report to SSA, plaintiff stated that "[a]cademically [A.B.] is adequate."  (Tr. 131).

And in September 2016, A.B.'s psychiatrist wrote that he was "doing well in

school."  (Tr. 235).  A.B.'s GAF scores showed mild to moderate impairment,

including scores of 70 in September 2015 (Tr. 224), 60 in August 2016 (Tr. 227),

65 in September 2016 (Tr. 233), 52 in September 2016 (Tr. 239), and 60 in

October 2016 (Tr. 241).  A note from September 2016 stated that A.B. was "doing

a lot better on the med[ication]" and that "all reported symptoms are reduced."

(Tr. 235).  The note also stated that A.B.'s "family is happy with progress" and that

he is "doing well in school." *Id*. In January 2017, A.B. reported that he was having difficulty focusing in school, but enjoyed playing basketball, riding his bike, playing video and board games with his friends and family, and watching TV. (Tr. 250). A.B. also reportedly did "well in track and got three first place medals" and was "involved and d[id] very well in a spelling bee." *Id*.

The ALJ's finding is also supported by the medical opinions. (Tr. 21). In June 2015, Drs. Schirado and Schwartz opined that A.B.'s limitations in attending and completing tasks were less than marked, opinions which the ALJ gave "great weight." (Tr. 21, 54). The ALJ also gave great weight to Dr. Williams' evaluation, which included the administration of an IQ test. (Tr. 25, 211-216). A.B.'s full-scale score on the IQ test placed him in the 30th percentile for his age, which was well above the 2nd percentile that is associated with marked limitations. (Tr. 215). Notably, A.B.'s performance on the achievement tests revealed above average scores, placing him in the 99th percentile for reading, the 99.9th percentile for spelling, and the 55th percentile in arithmetic. (Tr. 214). Based on A.B.'s testing and observations of impaired attention and concentration, Dr. Williams recommended: certain classroom accommodations, including a setting that emphasizes the visual presentation of learning materials; that A.B. be allowed to take all chapter, mid-term, final, and national exams in a low stimulus test environment; and extended duration test times for all exams, tests, mid-terms,

finals, and national exams.  (Tr. 214-16).  Such accommodations do not suggest a marked limitation.

Based on the foregoing evidence, the undersigned agrees with the Commissioner that the ALJ's finding that A.B. was not markedly limited in this domain was supported by substantial evidence.  This is not to suggest that A.B. does not suffer from some significant limitations in this domain.  However, because substantial evidence supports the ALJ's finding, plaintiff's citation to other evidence in the record, even substantial evidence, to support the opposite conclusion is not sufficient for the Court to find reversible error.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (The ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.").

b.  Interacting and relating to others

The domain of interacting and relating with others considers "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others."  20 C.F.R. § 416.926a(i).  20 C.F.R. § 416.926a provides guidance, by age group, on how children should be functioning in this domain:

17

> (iv) School-age children (age 6 to attainment of age 12).
> When you enter school, you should be able to develop
> more lasting friendships with children who are your age.
> You should begin to understand how to work in groups to
> create projects and solve problems. You should have an
> increasing ability to understand another's point of view
> and to tolerate differences. You should be well able to
> talk to people of all ages, to share ideas, tell stories, and
> to speak in a manner that both familiar and unfamiliar
> listeners readily understand.

20 C.F.R. § 416.926a also provides examples of limited functioning in this

domain:

> (3) Examples of limited functioning in interacting and
> relating with others. The following examples describe
> some limitations we may consider in this domain. Your
> limitations may be different from the ones listed here.
> Also, the examples do not necessarily describe a
> "marked" or "extreme" limitation. Whether an example
> applies in your case may depend on your age and
> developmental stage; e.g., an example below may
> describe a limitation in an older child, but not a limitation
> in a younger one. As in any case, your limitations must
> result from your medically determinable impairment(s).
> However, we will consider all of the relevant information
> in your case record when we decide whether your
> medically determinable impairment(s) results in a
> "marked" or "extreme" limitation in this domain.
>
> > (i) You do not reach out to be picked up and held
> > by your caregiver.
> > (ii) You have no close friends, or your friends are
> > all older or younger than you.

> (iii) You avoid or withdraw from people you
> know, or you are overly anxious or fearful of
> meeting new people or trying new experiences.
> (iv) You have difficulty playing games or sports
> with rules.
> (v) You have difficulty communicating with
> others; e.g., in using verbal and nonverbal skills to
> express yourself, carrying on a conversation, or in
> asking others for assistance.
> (vi) You have difficulty speaking intelligibly or
> with adequate fluency.

The ALJ analyzed this domain as follows:

> The claimant has less than marked limitation in
> interacting and relating with others. The claimant's
> schoolteacher notes in March of 2015, he has no
> problems getting along with others (Exhibit 6E, page 4 ).
> However, his mother testified she more recently gets
> constant calls from the school about his behavior. She
> also indicates he has attempted to start fires. However,
> there is no indication of contact with juvenile authorities.
> The State agency consultant opines no limitations in this
> area of functioning (Exhibit 1 A). That opinion is
> accorded partial weight. The testimony of the claimant's
> mother and the examination of Dr. Dickson confirm
> moderate limitation in this area of functioning.

(Tr. 22). Plaintiff provides a chart of A.B.'s difficulties which she says show that

he had marked limitations in interacting with and relating to others. This chart

shows that A.B. is at times impulsive, has anger issues, is defiant with his mother,

isolates himself at home, is destructive, has mood swings and tantrums, has no

friends at school, was cruel to family pets, has been suspended from bus

transportation, and has been disciplined multiple times at school because of disruptive and physical behaviors.  (ECF No. 17, PageID.335-341).

Again, the ALJ's assessment of this domain is supported by substantial evidence, even though plaintiff has pointed to evidence show some limitations. While the Commissioner acknowledges that A.B. has had some difficulties complying with rules and there was resulting disciplinary action taken, he also points out that A.B.'s teacher stated he had no limitations interacting with and relating to others.  (Tr. 156, report completed by Krista Ketterer, dated 3/25/15). Similarly, in June 2015, Drs. Schirado and Schwartz identified no limitation in A.B.'s ability to interact with or relate to others.  (Tr. 54).  Ultimately, however, the ALJ gave greater weight to Dr. Dickson's opinion that A.B. had moderate limitations in this domain.  (Tr. 22, 209).  Dr. Dickson, who evaluated A.B. in June 2015, discussed A.B.'s reported behavior problems—including "not staying in his seat, disrupting others, and not waiting in line," terrorizing pets, having conflicts with younger children, and being easily manipulated by other children—before concluding that his "abilities to interact and relate to others are *moderately* impaired by his hyperactivity and defiance."  (Tr. 207-09) (emphasis added).  Dr. Dickson also noted that A.B. "reportedly has friends both in school and outside of school," "usually gets along satisfactorily with family members," and "usually follows directions from teachers."  (Tr. 208).  Consistent with Dr. Dickson's

opinion, in January 2017, A.B. confirmed that he socialized with other children both in and out of school, including Rodrico and Treyvon who he "just me[]t them this year," as well as Malicki and Isaiah, who he had reportedly known since the second grade.  (Tr. 250).

Based on the foregoing evidence, the undersigned agrees with the Commissioner that the ALJ's finding that A.B. was not markedly limited in this domain was supported by substantial evidence.  Again, because substantial evidence supports the ALJ's finding, plaintiff's citation to other evidence in the record, even substantial evidence, to support the opposite conclusion is not sufficient for the Court to find reversible error.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (The ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.").

### c.    Caring for yourself

Plaintiff contends that A.B. is markedly impaired in this domain based on his enuresis and hygiene issues.  Plaintiff says that enuresis has been problematic for A.B. for several years as reflected in the chart in Plaintiff's brief, outlining treatment sought for nighttime and daytime enuresis.  (ECF No. 17, PageID.329-332).  As discussed in detail above relating to the claimed step two error, there is

not sufficient evidence in the record to suggest the enuresis caused any functional limitations.  Accordingly, the court find no basis to overturn the ALJ's finding that A.B. was not limited in his ability to care for himself within the meaning of this domain.

3.      Development of the Record/Acquiring and Using Information

Plaintiff was not represented at the hearing before the ALJ.  According to plaintiff, it is clear from the record that the family did not understand that they needed to submit more evidence in the form of school records in order to fully develop their case.  Plaintiff contends that the ALJ knew this and owed the family a special duty to develop the record and ensure a fair hearing.  According to plaintiff, had they understood, they might have requested a new Teacher Questionnaire.  Plaintiff argues that the testimony and other evidence in the record about A.B.'s difficulties in school should have prompted the ALJ to obtain updated school records.

"While the absence of counsel might cause us to scrutinize the record with care, it alone is not a grounds for reversal or remand."  *Holden v. Califano*, 641 F.2d 405, 408 (6th Cir. 1981) (social security retirement benefits case).  As the Commissioner points out, "the key inquiry is whether the administrative law judge fully and fairly developed the record through a conscientious probing of all relevant facts."  *Rowden v. Chater*, 1996 WL 294464, at *1 (6th Cir. June 3, 1996).

Specifically, the ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000).  The ALJ is obligated "to fully develop the record," *Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 397 (6th Cir. 2010), and bears "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing," *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)); *see Longnecker v. Comm'r of Soc. Sec.*, 2016 WL 3912859, at *6 (E.D. Mich. May 25, 2016), report and recommendation adopted, 2016 WL 3903192 (E.D. Mich. July 19, 2016) (O'Meara, J.).  An ALJ is required to "develop [a claimant's] complete medical history" and to "make every reasonable effort to help [the claimant] get medical reports from [the claimant's] medical sources."  20 C.F.R. § 404.1512(d); *see Sutton v. Comm'r of Soc. Sec.*, 2013 WL 1122877, at *2 (E.D. Mich. Mar. 18, 2013) (Cleland, J.).

As explained in *Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. 2008), there is a heightened special duty to develop the record where a claimant is (1) without counsel; (2) incapable of presenting an effective case; and (3) unfamiliar with hearing procedures.  *Id*. (citing *Lashley*, at 1051-52).  However, plaintiff has not pointed to any evidence in the record that she was either incapable of presenting an effective case (factor 2), or unfamiliar with hearing procedures

(factor 3).  While plaintiff says it is "clear from the record" that the family did not know what evidence needed to be submitted, or that they understood the six domains, plaintiff does not point the court to any evidence demonstrating this fact.

At its core, plaintiff's complaint is not really that the ALJ failed to develop the record during the hearing while examining the witnesses and probing the record evidence.  Rather, plaintiff's complaint is that the ALJ failed to obtain updated school records after the hearing.  The ALJ's special duty to the develop the record, however, does not generally require an ALJ to gather medical and other records that may appear to be missing from the record.  Instead, as explained in *Morgan v. Astrue*, 2010 WL 3723992, *8 (E.D. Tenn. June 30, 2010), report and recommendation adopted, 2010 WL 3723985 (E.D. Tenn. Sept. 15, 2010), the "special duty" rule articulated in *Lashley* and *Wilson* primarily requires ALJs to expend extra effort and care *in their administrative courtrooms*.  That is, ALJs must develop the record in the courtroom to the fullest extent possible when questioning the claimant and other witnesses and "by making specific requests for additional documentation, testimony, or evidence that is unavailable at the hearing, but would be helpful in rendering a decision."  *Id.*  Yet, these cases do not impose a duty on ALJs "to serve as a pro se claimant's investigator, researcher, records custodian, or advocate *outside the courtroom*."  *Id.* (emphasis is original).  The court further explained:

> In other words, if "special circumstances" exist at a hearing and the ALJ becomes aware of relevant medical records that are not part of the administrative record, the ALJ has a duty to (1) advise the claimant to obtain and submit those records; (2) suggest ways that the claimant might obtain the records; (3) make sure that the claimant understands how to submit the records; (4) refrain from making a disability determination until the claimant has been given a reasonable amount of time to provide the records; and (5) explain to the claimant how the disability determination will be made if the records are not submitted.

*Id*. at *8.[3]  The court also noted an exception where such a record-gathering duty was imposed on an ALJ – where the ALJ indicated that he or she would gather such records.  Accordingly, where the ALJ affirmatively undertakes such a duty and fails to obtain such records, the ALJ may violate his obligation to develop the record.  *Id*. at *9 (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)); *see also Strang v. Comm'r of Soc. Sec.*, 611 Fed. Appx. 271, 276 (6th Cir. 2015) (The Sixth Circuit has found it reversible error when an ALJ promises to obtain records and does not do so.).  There is no evidence that the ALJ undertook any such obligation here, nor does plaintiff suggest as much.  Instead, as discussed below, the ALJ explained in detail how and why plaintiff should obtain and submit updated records

---

[3] Other courts in this Circuit have followed *Morgan's* lead:  *Jones v. Comm'r of Soc. Sec.*, 2013 WL 4748083 (N.D. Ohio Sept. 4, 2013); *Taylor v. Colvin*, 2013 WL 6162527 (N.D. Ohio Nov. 22, 2013); *Potter v. Colvin*, 2015 WL 12531994 (E.D. Tenn. June 23, 2015).

The  present circumstances are similar to those examined in *Ferland v. Comm'r of Soc. Sec.*, 2018 WL 4102852 (E.D. Mich. July 31, 2018), report and recommendation adopted, 2018 WL 4095075 (E.D. Mich. Aug. 28, 2018).  There, while the plaintiff was also pro se (by his own choice), the court found no other special circumstances present to suggest a heightened duty.  *Id*. (citing *Nabours v. Comm'r of Soc. Sec*., 50 Fed. Appx. 272, 275-76 (6th Cir. 2002) (holding that where the claimant "was able to put on her case with no discernable problems," was articulate in giving testimony, and there were no signs that the claimant's lack of representation was taken advantage of, the ALJ was not under a heightened duty to develop the record under *Lashley*); *Wilson v. Comm'r*, 280 Fed. Appx. 456, 459-60 (6th Cir. May 29, 2008) (finding that the ALJ adequately questioned the claimant on work limitations and did not need to inquire further when the claimant failed to tell the ALJ about certain mental or psychological limitations).  As in *Ferland*, plaintiff here is like most all Social Security claimants, who are, no doubt, not well versed in hearing procedures.  But, as set forth above, there is nothing in the transcript to demonstrate that plaintiff's "grasp of the proceedings" was so insufficient so as to require the ALJ to further develop the record.  *See Wilson*, 280 Fed. Appx. at 459.  Furthermore, at the hearing, the ALJ explained that he did not have any evidence for almost two years and that an attorney could help them ensure that all their evidence was in.  (Tr. 31).  The ALJ also explained that if

plaintiff did not obtain a lawyer, she would have to gather any new evidence and submit it after the hearing.  (Tr. 32).  The ALJ explained that cases are generally better presented with legal representation.  (Tr. 33).  Plaintiff said she had copies of A.B.'s most recent testing, which she provided to the ALJ and then she decided to proceed without a lawyer.  (Tr. 34).  The ALJ also asked plaintiff to obtain A.B.'s therapy records.  (Tr. 44, 46-47).  While these discussions did not involve school records, the ALJ made it clear that updated records were important to the decision-making process and that it was plaintiff's responsibility to provide them, thus complying with *Morgan's* requirement to advise the claimant on how to obtain and submit records of which the ALJ became aware during the hearing.  *Id*. at *8.  The colloquy suggests that plaintiff understood this responsibility.  Plaintiff suggests that the ALJ's discussion on the domain of acquiring and using information is not sufficient because of the lack of updated school records.  While the court takes no position on whether such an effort would have been successful, it is notable that even though plaintiff was represented by counsel at the appeals council level, she did not attempt to submit any updated school records to appeals council or to this court.  (Tr. 10).  *See Tucker on Behalf of PCW v. Comm'r of Soc. Sec.*, 2019 WL 2331647, *12 (N.D. Ohio May 15, 2019) (No error where the ALJ did not request updated school records after the hearing where some educational records contained in the record.).

27

## IV.   CONCLUSION AND ORDER

Even if substantial evidence exists suggesting otherwise, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).   "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."   *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).   Plaintiff's evidence is insufficient to detract from the substantial evidence that he ALJ cited in support of the decision.   Here, the ALJ's decision falls well within the zone of choice and there is no basis to disturb that decision. Accordingly, plaintiff's motion for summary judgment is **DENIED**, defendant's motion for summary judgment is **GRANTED**, and the findings of the Commissioner are **AFFIRMED**.

**IT IS SO ORDERED**.

Date: November 30, 2020                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States District Judge